UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BURN FITNESS, LLC[1]

    Debtor.

Chapter 11
Case No. 21-43828-MAR
Hon. Mark A. Randon
*Jointly Administered*

## COVER SHEET FOR MOTION TO APPROVE SALE PROCEDURES

The debtor has filed a motion for approval of procedures for the sale of assets,

which is attached to this cover sheet. Pursuant to E.D. Mich. L.B.R. 6004-1, the

debtor has identified below, by page and paragraph number, the location in the

proposed order accompanying the motion of each of the following provisions:

| PROVISION | Contained in proposed order | Location in proposed order |
|---|---|---|
| (1) Provisions concerning the qualifications of the bidding parties. | _____ Yes<br><br>__x__ No | Page ___, ¶ ___ |
| (2) Provisions concerning the criteria for a qualifying bid and any deadlines for (i) submitting such a bid, and | _____ Yes<br><br>__x__ No | Page ___, ¶ ___ |

---

[1] The Debtors in these jointly administered cases are Burn Fitness, LLC, Chapter 11 Case No. 21-43828, filed April 30, 2021; Burn Fitness-2, LLC, Chapter 11 Case No. 21-43840, filed April 30, 2021; Burn Fitness-3, LLC, Chapter 11 Case No. 21-43844, filed April 30, 2021.

| | | |
|---|---|---|
| (ii) notification of whether the bid made constitutes a qualifying bid. | | |
| (3) Provisions that require qualified bids to identify points of variation from the stalking horse bid (including price and other terms). | _____ Yes  <br> __x__ No | Page ___, ¶ ___ |
| (4) Provisions pertaining to the conditions to the qualified bidders' obligation to consummate the purchase (including the time period within which the purchaser must close the transaction). | __x__ Yes  <br> _____ No | Page 3 – 4, ¶ 8 |
| (5) Provisions pertaining to the amount required for a good faith deposit. | _____ Yes  <br> __x__ No | Page ___, ¶ ___ |
| (6) Provisions that relate to a "Back-Up Buyer" should the first winning bidder fail to close the transaction within a specified period of time. | __x__ Yes  <br> _____ No | Page 3-4, ¶ 8 |
| (7) No-shop or No-Solicitation provisions including the justification for such provision. | _____ Yes  <br> _____ No | Page ___, ¶ ___ |
| (8) Provisions relating to Break-Up fees, Topping fees, and/or Expense Reimbursement (including the waiver of such fees due to rebidding). | _____ Yes  <br> __x__ No | Page ___, ¶ ___ |
| (9) Provisions specifying the bidding increments. | _____ Yes  <br> __x__ No | Page ___, ¶ ___ |
| (10) Provisions relating to auction procedures including manner in which auction is to be conducted and when the auction will be open and when it will close. | __x__ Yes  <br> _____ No | Page 2, ¶ 2 |

| | | |
|---|---|---|
| (11) Provisions relating to whether the auction will occur and the termination of the auction process and/or sale. | _____ Yes<br><br>__x__ No | Page ___, ¶ ___ |
| (12) Provision whether 14 day stay of F.R.Bankr.P. 6004(h) and 6006(d) is waived. | __x__ Yes<br><br>_____ No | Page 5, ¶ 16 |
| (13) Provisions regarding timing for notice, submission of bids, objections to sale and other key events. | _____ Yes<br><br>__x__ No | Page ___, ¶ ___ |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

|  |  |
|---|---|
|  | Chapter 11 |
| BURN FITNESS, LLC[1] | Case No. 21-43828-MAR |
|  | Hon. Mark A. Randon |
| Debtor. | *Jointly Administered* |

_____/

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO SELL ASSETS AT AUCTION SALE FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, AND TRANSFERRING LIENS TO PROCEEDS

Burn Fitness, LLC, Debtor and Debtor in Possession in the above captioned case, and with its related Debtor entities, Burn Fitness-2, LLC and Burn Fitness-3, LLC (hereinafter "Debtors"), by and through their counsel, Maddin, Hauser, Roth & Heller, P.C. ("Maddin Hauser"), hereby submit their *Motion for Entry of an Order Authorizing Debtors to Sell Assets at Auction Sale Free and Clear of Liens, Claims, and Encumbrances, and Transferring Liens to Proceeds* (the "Motion") and request entry of an order substantially in the form attached hereto as **Exhibit 1**. In support of the Motion, the Debtors state as follows:

_____

[1] The Debtors in these jointly administered cases are Burn Fitness, LLC, Chapter 11 Case No. 21-43828, filed April 30, 2021; Burn Fitness-2, LLC, Chapter 11 Case No. 21-43840, filed April 30, 2021; Burn Fitness-3, LLC, Chapter 11 Case No. 21-43844, filed April 30, 2021.

03430897 v2

## Background and Jurisdiction

1.      On April 30, 2021 (the "Petition Date"), the Debtors commenced their cases by filing voluntary petitions for relief under Subchapter V of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

2.      The Debtors continue in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to §1182 of the Bankruptcy Code.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      The statutory basis for the relief requested is found in §§ 105(a), and 363(b) and (f) of the Bankruptcy Code, as implemented by Bankruptcy Rules 2002 and 6004, and LBR 6004-1 (E.D.M.).

5.      Charles M. Mouranie has been appointed as the Subchapter V Trustee in these proceedings.

6.      The factual background relating to the Debtors' businesses and the commencement of these chapter 11 cases is set forth in detail in the *Declaration of Alyssa Tushman in Support of Chapter 11 Petitions of Burn Fitness, LLC, Burn*

*Fitness-2, LLC and Burn Fitness-3, LLC, and First Day Motions* (the "Tushman Declaration") [Docket No. 9].

7.     The Debtors operate health and fitness centers in three separate locations, being Rochester, MI, Clawson, MI and Livonia, MI. Debtors focus on personal service and a high-quality experience.

8.     Debtors have been severely impacted by the COVID-19 pandemic, which resulted in total shut-downs of their facilities, and then significantly reduced operations pursuant to state regulations where they could only operate with 25% of their normal capacity.

9.     On March 22, 2017, Debtor Burn Fitness-3, LLC ("Burn-3"), as tenant, and Northridge Livonia LLC (the "Landlord") as landlord, executed that certain lease agreement (the "Lease Agreement") concerning Burn-3's use and occupancy of approximately 18,242 square feet of space (the "Premises") located at Northridge Commons (the "Shopping Center") in the City of Livonia, Wayne County, Michigan, commonly known as 33523 West Eight Mile Road, Livonia, Michigan, Suites F1, F2, F3, F4, F5, and M3.

10.     Prior to the COVID-19 pandemic, Burn-3 was timely with its rental obligations to the Landlord.  However, Burn-3 fell behind on its monthly obligations after the COVID-19 pandemic started and while Burn-3 attempted to

negotiate work-out payment arrangements, the Landlord ultimately would not agree to work with the company and sued for a money judgment.

11.  On April 15, 2021, the Court entered a judgment in the amount of $348,415.54 against Burn-3 and the lease guarantors Burn Fitness, LLC and Burn Fitness-2, LLC. The Landlord subsequently filed an eviction proceeding which was stayed by the institution of these Chapter 11 proceedings.

12.  Post-petition, Burn-3 has remained current on its obligations under the Lease and with respect to other expenses associated with the Premises. However, as part of their restructuring efforts, the Debtors have decided reduce their footprint and close Burn-3. Accordingly, Burn-3 intends to reject the Lease during the course of these proceedings and vacate the premises as soon as possible so as to curtail, as much as possible, additional post-petition payment obligations associated with the Premises. In order to do so, Burn-3 must take steps to liquidate and otherwise remove the equipment located at the Premises, and otherwise prepare the Premises to be turned over to the Landlord.

13.  Therefore, the Debtors desire to sell the fitness equipment and other non-fixture tenant improvements and physical assets located at the Premises. By separate motion, the Debtors seek to retain R.J. Montgomery & Assoc., Inc. (the "Auctioneer") to sell by public auction all of the physical, non-fixture tenant improvements and physical assets (each an "Asset" and collectively, the "Assets")

located at the Premises. The Debtors desire to utilize the services of the Auctioneer to maximize the value of the Assets and sell the Assets by public auction as described in this Motion.

## Relief Requested

13.     The Debtors request authority under 11 U.S.C. §363 and Fed. R. Bankr. P. 6004, to sell the Assets at public auction free and clear of all liens, claims, and encumbrances (the "Liens") with all Liens attaching to the sale proceeds with the same validity, extent, and priority as immediately prior to the sale. In addition, the Debtors request that the fourteen day stay of Fed. R. Bankr. P. 6004(h) be waived in connection with the proposed sale.

14.     As stated above, the Debtors would like to vacate the Premises as quickly as possible. As will be set forth below, the Auctioneer is prepared to immediately begin marketing the Assets and anticipates that the auction sale will be complete before the end of June 2021, so long as the marketing process can begin no later than June 7, 2021. If this can be accomplished, it will eliminate the need for the Debtors incur the July 2021 and forward payment obligations associated with the Premises. Therefore, concurrently with the filing of this Motion, the Debtors have filed a motion requesting shortened notice and scheduling an expedited hearing to consider the relief requested herein.

## Basis for the Relief Requested

15. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that "all sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that:

> [T]he notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).

16. A sale of substantially all of a debtor's assets should be authorized pursuant to § 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See e.g.*, *Stephens Indust., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp*., 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co*., 124 B.R. 169, 176 (D. Del. 1991); and *In Re Weatherly Frozen Food Group, Inc*., 149

B.R. 480, 482-483 (N.D. Ohio 1994). The *Hudson Railway* court, noting that under pre-Code law a preconfirmation asset sale could be held only upon a showing of emergency or compelling circumstances, nonetheless found the "sound business purpose" standard applicable and, discussing the requirements of that test under McClung and Lionel, observed:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value.

*Id*. at 176.

17. When deciding whether a sound business purpose exists for a proposed sale, a court must consider "all salient factors" pertaining to the proposed sale. *Stephens Indust., Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986)

18. In this case, the Debtors believe that the sale of the Assets through a public auction is supported by a reasonable and sound business justification. The Debtors acknowledge Comerica Bank's ("Comerica") first position perfected security interest against the Assets and that the Assets' net sale proceeds will be turned over to Comerica. An auction of the Assets is the best and most efficient

way to maximize their value and will therefore be of benefit to both Comerica and the Debtors' estates.

19.    Further, as discussed above, the Debtors do not have the luxury of engaging in a drawn-out process to market the Assets in the hopes that some of the Assets might command a marginally better price than that which might be realized through the proposed process. Burn-3 needs to vacate the Premises as quickly as possible so as to eliminate any further cash burn associated with its occupancy.

## Description of the Auction

20.    The Debtors propose to sell the Assets by public auction to be conducted by the Auctioneer as follows (the "Auction Procedures"):

a.    The public auction will be conducted virtually, pursuant to an online internet bidding process.

b.    The Assets will remain on the Premises for the duration of the Auction.

c.    The Auctioneer will host a one-day preview at the Premises to allow interested bidders to view the Assets.

d.    The Auctioneer will market the auction through an electronic brochure sent to approximately 5,000 subscribers through Athletic Business Magazine, will advertise on the Auction Exchange, and through the Auctioneer's website and will send out an e-mail blast to the Auctioneer's approximately 15,000 subscribers. The Auctioneer will also advertise the auction on Michigan and national auctioneer's association websites, as well as auctionzip, craigslist, facebook, and the like.

e.    The marketing process will begin on June 7, 2021, with the auction to conclude on **June 22, 2021**. The Auctioneer will be

responsible for all auction related activities, including security, payment for purchased Assets, and the supervision of a four-day Asset removal period.

f.     The Auctioneer will charge a 16% buyers' premium on all Assets and will charge successful buyers a 2% surcharge on any payments made via credit card.  The Auctioneer will also be reimbursed its out of pocket expenses from the sale proceeds, which costs the Auctioneer estimates to be approximately $7,000.00.

g.     The Auctioneer is also prepared to provide services to leave the premises in broom clean condition after the sale and removal of the Assets at the rate of $27.50 per hour per staff member, and anticipates that this will entail 50 to 70 hours of total person hours.

h.     The Assets will be sold free and clear of all liens, claims, and encumbrances.  The Assets will be sold "as is" and with all sales final, and will be subject to the terms of auction posted by the Auctioneer on its website at rjmauctions.com/terms.html and rjmauctions.com/auctions/online2/terms.html. No warranty or guaranty of fitness for a particular purpose will be given by the Debtors.

**<u>Transfer of Liens, Claims and Interests</u>**

21.     The Debtors may sell the Assets free and clear of all liens, claims, and encumbrances if certain conditions are met.  § 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)  such entity consents;

(3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

22.     Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Collateral free and clear of all liens, claims, interests, or encumbrances. Otherwise, §363(f)(5) of the Bankruptcy Code allows a debtor to sell property free and clear of liens when a legal or equitable proceeding could compel the lienholder to accept less than full money satisfaction for its interest. *See In re Grand Sale U.S.A.*, 178 B.R. 460, 462 (E.D. Mich. 1995) ('Thus, it is clear that Section 363(f)(5) allows trustees of an estate to sell property free and clear of liens when 'a legal or equitable proceeding' exists that will force the lienholder to accept less than full money satisfaction for their interest.").

23.     The Debtors will serve notice of this Motion on the Debtors' secured creditors.  The Debtors propose that the absence of any objection to the entry of an order approving this Motion be deemed "consent" to any sales within the meaning of 11 U.S.C. §363(f)(2).  To the extent any of the Debtors' secured creditors object to the Motion, such creditors will nevertheless be adequately protected by having

their liens attach to the sale proceeds in the same order of priority and with the same validity, force, and effect as the creditor had before the sale.

## Waiver of Compliance with Restrictions in Debtor's Lease

24.     The Debtors have reviewed the Lease Agreement.  Article IV, Section 4.01(b) states, in pertinent part: "No auction, liquidation, going out of business, fire or bankruptcy sales may be conducted in the Premises."

25.     Such provisions have been held to be unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code.  *See In re Ames Dep't Stores, Inc*., 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (deciding that enforcement of such lease restrictions would "contravene overriding federal policy requiring [the debtor] to maximize estate assets. . ."); *In re R.H. Macy and Co., Inc*., 170 B.R. 69, 73–74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open throughout the lease term, because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing the store); *In re Tobago Bay Trading Co.,* 112 B.R. 463, 467–68 (Bankr. N.D. Ga., 1990) (finding that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting a debtor from liquidating its inventory

were enforced); *In re Lisbon Shops, Inc*., 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding restrictive lease provision unenforceable in chapter 11 case where the debtor sought to conduct a liquidation sale).

26.     Thus, the Debtors request that the Court authorize the Debtors and the Auctioneer to conduct the auction without interference by the Landlord or other persons affected, directly or indirectly, by the auction.

## Waiver of Fed. R. Bankr. P. 6004(h) and 6006(d)

27.     Due to the need to conduct the auction as soon as possible, the Debtors assert that cause exists to waive the requirements of Fed. R. Bankr. P. 6004(h) and 6006(d), and the Debtors request that the Order approving this Motion provide that it shall be effective immediately and that the 14-day stay shall not apply.

## Notice

28.     No trustee or examiner has been appointed in this Chapter 11 case and no Unsecured Creditors Committee has been designated.

29.     A complete copy of this Sale Motion has been served by electronic mail, if available, and first-class mail on (i) all creditors identified on the Matrix of this case; (ii) the Office of the United States Trustee; (iii) the Debtors' secured creditors, and (iv) all parties who have requested notice in the case.

## Relief Requested

WHEREFORE, the Debtor requests that this Court enter an Order in the form attached hereto as **Exhibit 1** and grant such other relief as the Court deems appropriate in this matter.

Respectfully submitted,

MADDIN, HAUSER, ROTH & HELLER, P.C.

By: */s/ Julie Beth Teicher*
        David M. Eisenberg (P68678)
        Julie Beth Teicher (P34300)
        Counsel for Debtors
        28400 Northwestern Hwy., Suite 200
        Southfield, MI  48034
        (248) 354-4030
        deisenberg@maddinhauser.com
        jteicher@maddinhauser.com

DATED:   May 27, 2021

**EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Chapter 11

BURN FITNESS, LLC[1]
Case No. 21-43828-MAR
Hon. Mark A. Randon

Debtor.
***Jointly Administered***

_____/

**ORDER AUTHORIZING DEBTORS TO SELL ASSETS AT AUCTION
SALE FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES, AND TRANSFERRING LIENS TO PROCEEDS**

THIS MATTER is before the Court upon the Debtors' *Motion for Entry of
an Order Authorizing Debtors to Sell Assets at Auction Sale Free and Clear of
Liens, Claims, and Encumbrances, and Transferring Liens to Proceeds* (the
"Motion") [ECF No. ____].[2]  The Court has reviewed the Motion and has found
that: (a) jurisdiction to consider the Motion is proper under 28 U.S.C. §§ 157 and
1334; (b) venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409; (c)

---

[1] The Debtors in these jointly administered cases are Burn Fitness, LLC, Chapter
11 Case No. 21-43828, filed April 30, 2021; Burn Fitness-2, LLC, Chapter 11 Case
No. 21-43840, filed April 30, 2021; Burn Fitness-3, LLC, Chapter 11 Case No. 21-
43844, filed April 30, 2021.

[2] Capitalized terms used but not defined in this Order have the meanings given to
them in the Motion

notice of the Motion was properly provided; (d) good cause exists to grant the relief requested in the Motion; (e) the relief requested in the Motion is in the best interests of the Debtors, the Debtors' estates, and creditors of the Debtors' estates and (f) all objections, if any, to the Motion have been withdrawn, waived, settled, or overruled;

**IT IS HEREBY ORDERED** that:

1.      The Motion is granted.

2.      The Debtors are authorized to sell the Assets by public auction ("Auction") pursuant to 11 U.S.C. §§ 363(b)(1), 363(f), and the terms of the Motion.

3.      The Debtors are authorized to take any and all actions necessary to perform, consummate, implement and close the sale of the Assets as described in the Motion.

4.      The sale of the Assets will be free and clear of all claims, liens, liabilities, interests, rights, and encumbrances, including, without limitation, security interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, contract rights, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured,

03430897 v2

material or non- material, disputed or undisputed, whether arising before or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise (individually, each a "Claim," and collectively, "Claims," and, as used in this Order, such term also includes, without limitation, any and all "claims" as that term is defined in 11 U.S.C. § 101(5)).

5.      Any Claim asserted against an Asset will attach to the consideration to be received by the Debtors with the same validity, force, priority, and effect which the claimant now has against the Asset and subject to any and all claims and defenses the Debtors or other parties may possess with respect to such Claims.

6.      After payment of the Auctioneer's fees and expenses, the funds for which will be held by the Auctioneer pending approval of the Auctioneer's fees and expenses pursuant to application to and order of the Court, the Auctioneer will remit the remaining net proceeds from the sale of the Assets directly to Comerica Bank.  For the avoidance of doubt, other than as set forth herein, no expenses of administration associated with the Auction shall be charged against or recovered from the sale proceeds of the Assets pursuant to sections 105(a), 506(c), or 552(b) of the Bankruptcy Code, or any similar principle of law or equity, without the prior written consent of Comerica Bank.

7.      Any party's failure to object to the relief requested in the Motion is determined to be "consent" within the meaning of 11 U.S.C. § 363(f)(2).

8.    The Assets will be sold "as is", all sales are final, and will be subject to the terms of auction posted by the Auctioneer on its website at rjmauctions.com/terms.html and rjmauctions.com/auctions/online2/terms.html. No warranty or guaranty of fitness for a particular purpose will be given by the Debtors.

9.    Unless otherwise agreed to by the Debtors' secured creditors, the Debtors and the guarantors of the Comerica Bank loans, Alyssa Tushman and Mark DuFresne, and all insiders (as that term is defined by 11 U.S.C. §101(31)) of the Debtors are prohibited from bidding on or purchasing any of the Assets through the Auction.

10.    At the conclusion of the Auction and upon payment in full of the purchase price for an Asset, all of the Debtors' right, title, and interest in the Asset will be immediately vested in the purchaser under 11 U.S.C. § 363(b) and 363(f) free and clear of all Claims.  Such transfer will constitute a legal, valid, binding and effective transfer of the Asset.

11.    The Auction will be conducted notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Auction. Abandonment of assets, or "going dark" provisions will not be enforceable in conjunction with the Auction.  Breach of any such provisions in these proceedings

in conjunction with the Auction will not constitute a default under the Lease Agreement or provide a basis to terminate the Lease Agreement; *provided* that the Auction is conducted in accordance with the terms of this Order and the Auction Procedures.

12.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Assets to any purchaser in accordance with the Motion and this Order.

13.     Removal of an Asset from the Premises will be at the risk and expense of the purchaser.

14.     The automatic stay of 11 U.S.C. §362(a) is modified, to the extent necessary, to permit Comerica Bank to file appropriate UCC-3 amendment(s) as necessary to delete collateral which is sold pursuant to the Auction.

15.     This Court retains exclusive jurisdiction to interpret, implement, and enforce the terms and provisions of this Order and to compel delivery and assignment of the Assets, to protect a purchaser against any Claims, and to enter orders, as appropriate, to transfer the Assets.

16.     This Order is effective immediately upon entry and is not subject to any stay, including under Fed. R. Bankr. P. 6004(h).

In re:

BURN FITNESS, LLC[1]

    Debtor.

_____/

Chapter 11
Case No. 21-43828-mar
Hon. Mark A. Randon
***Jointly Administered***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 27, 2021, the Debtors' Motion for Entry of an Order Authorizing Debtors to Sell Assets at Auction Sale Free and Clear of Liens, Claims, and Encumbrances, and Transferring Liens to Proceeds (the "Motion") was filed with the Clerk of the Court for the U.S. Bankruptcy Court, Eastern District of Michigan using the ECF system and a copy was sent to all attorneys of record herein using the ECF system on said date.

In addition, a copy of the Motion was served upon all parties in interest who have not appeared in this matter and set forth on the attached list.

Respectfully submitted,

MADDIN HAUSER ROTH & HELLER, P.C.
*/s/Julie Beth Teicher*
Julie Beth Teicher (P34300)
Attorneys for Debtor
28400 Northwestern Hwy., Second Floor
Southfield, MI 48034
(248) 354-4030
jteicher@maddinhauser.com

Dated: May 27, 2021

---

[1] The Debtors in these proposed jointly administered cases are Burn Fitness, LLC, Chapter 11 Case No. 21-43828, filed April 30, 2021; Burn Fitness-2, LLC, Chapter 11 Case No. 21-43840, filed April 30, 2021; Burn Fitness-3, LLC, Chapter 11 Case No. 21-43844, filed April 30, 2021.

Label Matrix for local noticing
0645-2
Case 21-43828-mar
Eastern District of Michigan
Detroit
Thu May 27 11:02:54 EDT 2021

AT&T Cable
28501 Orchard Lake Road
Farmington, MI 48334-2951

AZT Corporation
P. O. Box 209277
Austin, TX 78720-9271

American Express
P. O. Box 0001
Los Angeles, CA 90096-8000

Blue Cross Blue Shield
P. O. Box 674416
Detroit, MI 48267-3458

Cheryl Luckoff
255 E. Brown Street, Suite 102
Birmingham, MI 48009-6207

Cintas
51518 Quadrate Drive
Macomb, MI 48042-4055

Clawson, City of - Treasurer
425 N. Main Street
Clawson, MI 48017-1500

(p)COMCAST
41112 CONCEPT DR
PLYMOUTH MI 48170-4253

Comerica Bank
Stancato Tragge Wells, PLLC
2 Towne Square
Suite 825
Southfield, MI 48076-3766

Comerica Bank
39200 6 Mile Road
MC 7578
Livonia, MI 48152-2689

Commercial Upholstery
31555 W. 14 Mile Rd, Suite 111
Farmington, MI 48334-1286

Consumers Energy
P. O. Box 740390
Cincinnati, OH 45274-0309

DTE
1 Energy Plaza
Detroit, MI 48226-1221

First Insurance Funding
459 Skokie Blvd., Ste 1000
Northbrook, IL 60062-3709

Gauss Group LLC
c/o The Farbman Group
28400 Northwestern Hwy., 4th Floor
Southfield, MI 48034-8349

Kessler & Associates, P.C.
31800 Northwestern Hwy., Suite 110
Farmington, MI 48334-1663

Legacy Bank
101 West Main
Hinton, OK 73047

Livonia, City of – Treasurer
33000 Civic Center Drive
Livonia, MI  48154-3060

Mark DuFresne
3168 Rabeeh
Auburn Hills, MI 48326-2055

Mark Tushman
26675 Normandy
Franklin, MI  48025-1033

Midwest Strategy Group
101 S. Washington Square, Ste. 300
Lansing, MI 48933-1732

Morganroth & Morganroth
344 N. Old Woodward, Suite 200
Birmingham, MI 48009-5310

Northridge Livonia LLC
c/o Grand Sakwa Mgt, LLC
28470 13 Mile, #220
Farmington, MI 48334-5400

PNC Visa
P. O. Box 8561777
Louisville, KY  40285-6177

Paradigm Plumbing
2300 Burdette Street
Ferndale, MI 48220-1466

Rochester Hills, City of – Treasurer
16748 Collection Center Drive
Chicago, IL 60693-0167

Tabani Group, Attn Remy Duvoisin
16600 Dallas Parkway
Dallas, TX 75248-2608

Tech Johnny
4700 Lockhart St
West Bloomfield, MI 48323-2529

Tri-County Window
47116 Mallard Drive
Utica, MI 48315-5003

U.S. Attorney – E. D. Michigan
Attn:  Civil Division
211 W. Fort St., Suite 2001
Detroit, MI 48226-3220

U.S. Small Business Administration
14925 Kingsport Road
Fort Worth, TX 76155-2243

U.S. Small Business Administration
2 North St., #320
Birmingham, AL 35203

United States of America (IRS)
United States Attorney
211 W. Fort Street
Suite 2001
Detroit, MI 48226-3220

United States of America (SBA)
211 W. Fort Street
Suite 2001
Detroit, MI 48226-3220

Verizon Wireless
P. O. Box 408
Newark, NJ 07101-0408

Whebles Windows
44330 S. Umberland Court
Canton, MI 48187-2716

*Alyssa Tushman
26675 Normandy
Franklin, MI 48025-1033*

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Comcast
P. O. Box 3005
Southeastern, PA 19398-3005